# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

VERNON LEE COX, JR.,

|  |  |  |  |
|---|---|---|---|
| | Petitioner, | : | Case No. 3:15-cv-098 |
| - vs - | | | District Judge Thomas M. Rose |
| | | | Magistrate Judge Michael R. Merz |
| CHARLOTTE JENKINS, Warden,  Chillicothe Correctional Institution, | | : | |
| | Respondent. | | |

## REPORT AND RECOMMENDATIONS

Petitioner Vernon Cox brought this habeas corpus action under 28 U.S.C. § 2254 to obtain relief from his conviction in the Montgomery County Common Pleas Court for a number of sexual offenses and his consequent imprisonment (Petition, ECF No. 1, PageID[1] 1). Petitioner has also filed an extensive Brief supplementing the Petition (ECF No. 4). On the Court's Order (ECF No. 2), the Warden has filed the State Court Record (ECF Nos. 5, 7) and a Return of Writ (ECF No. 6).  Cox has filed a Reply (ECF No. 10), making the case ripe for decision.

---

[1] When any document is filed with this Court, the Court's electronic filing system affixes a unique Page Identification Number in the upper right hand corner of every page.  The attention of the parties is directed to this Magistrate Judge's Standing Order of May 8, 2014, which provides in pertinent part "All references to the record in this Court must be to the filed document by title, docket number, and PageID reference.  (E.g., Defendant's Motion to Dismiss, Doc. No. 27, PageID ___.)  The large majority of cases before this Magistrate Judge are habeas corpus cases with large state court records and correct citation to the record is critical to judicial economy.  Therefore, nonconforming filings will be stricken.

**Procedural History**

Cox was indicted by the Montgomery County grand jury in September 2011 on numerous counts of criminal sexual behavior involving his step-daughter, C.F., and one count involving a neighbor child, A.C.  On his motion, the count involving A.C. was severed and he pled guilty to that charge after the trial jury convicted him on fifteen counts involving C.F.  He appealed, raising nine assignments of error, but the Second District Court of Appeals affirmed,  *State v. Cox*, 2013-Ohio-4941, 2013 Ohio App. LEXIS 5144 (2nd Dist. Nov. 8, 2013),[2] and the Ohio Supreme Court declined to exercise jurisdiction over a subsequent appeal.  *State v. Cox*, 138 Ohio St. 3d 1436 (2014).

On July 9, 2013, Cox filed a petition for post-conviction relief under Ohio Revised Code § 2953.21.  After the trial court granted the State summary judgment, Cox appealed.  The Second District again affirmed.  *State v. Cox*, 2015-Ohio-894, 2015 Ohio App. LEXIS 887 (2nd Dist. Mar. 13, 2015).  Cox did not appeal to the Ohio Supreme Court.

On January 28, 2014, Cox filed an Application for Reopening the Appeal under Ohio R. App. P. 26(B) which was denied.  Cox did not appeal to the Ohio Supreme Court.

On May 19, 2014, Cox filed a motion for re-sentencing on the theory that the sentencing order in his case was void and a non-final appealable order.  The trial court denied the motion, the court of appeals affirmed, *State v. Cox*, 2015-Ohio-895, 2015 Ohio App. LEXIS 879 (2nd Dist. Mar. 13, 2015), and Cox did not further appeal.

Cox filed his Petition in this Court on March 18, 2015 in which he pleads the following grounds for relief:

---

[2] Citations herein to "*Cox, supra*," are to this decision.

2

**Ground One:**  There was insufficient evidence to find petitioner [guilty] on the charges [of which] he was convicted.

**Supporting Facts**:  Petitioner's convictions must be overturned due to insufficient evidence, for as the evidence presented failed to prove beyond a reasonable doubt that petitioner has committed the crimes he was accused of, which violated his Due Process rights under the Fourteenth Amendment.

**Ground Two:**  Under the confrontation clause of the Sixth Amendment, petitioner was limited to the questioning regarding herpes, and also not allowed to call to the stand Detective Mitchell regarding the missing notes.

**Supporting Facts:**  The defense was limited on the questions he could ask regarding the herpes virus. This violated his Sixth Amendment right to present a proper defense. Petitioner was also precluded from calling to the witness stand the lead detective on the case, Detective Mitchell. He was excused by the court from testifying due to some illness even the exculpatory evidence was handled by him and lost. Ms. Brockert notes were given to him and he could have testified as to what happened to them or what was in the notes.

**Ground Three**:  Cumulative Errors

**Supporting Facts**:  Due to the numerous errors in the trial court, there was a cumulative effect that denied petitioner a fair trial. A few of these errors: 1) extraneous information received by jury; 2) witness tampering; 3) disappearance of Ms. Brockert's notes (exculpatory evidence); 4) state's exhibits 1(A) and 1(B) allowed in as evidence for jury to look at during deliberations was prejudicial.

**Ground Four:** Ineffective Assistance of Trial Counsel under the Sixth Amendment.

**Supporting Facts**:  Counsel was ineffective for allowing the testimony of Dr. Miceli, for not making a more thorough investigation regarding the herpes virus, and also by not forcing the court to have Detective Mitchell testify. Defense counsel also failed to call a witness to the stand that could testify in regards to his work records which could have established an alibi for the alleged abuse. Also during plea bargaining phase.

3

**Ground Five:**  Use of the grand jury testimony to impeach the alleged victim due to her inconsistencies.

**Supporting Facts:**  Defense counsel attempted to show, through C.F.'s grand jury testimony, that what she stated at the beginning, and what she is claiming now are inconsistent. Defense proved that, however the court erred when it refused to impeach her as a witness, which was the prosecution's entire case.

**Ground Six:**  Expert Testimony of Dr. Miceli was prejudicial to petitioner, since it was irrelevant and only bolstered C.F.'s testimony.

**Supporting Facts**:  The prosecution call as an expert witness in child psychology, Dr. Miceli to the stand, however, she had nothing to offer the case since she never interviewed the alleged victim, never viewed any of the videos or any other material regarding the case. Her testimony was solely based on what the prosecution had told her. Dr. Miceli testified on delayed reporting to bolster the alleged victim's testimony, however delayed reporting in not an "exact science like that of DNA and Fingerprinting. [sic]

**Ground Seven:**  Ineffective assistance of appellate counsel.

**Supporting Facts**:  During petitioner's direct appeal, his counsel did not properly argue the "grounds" for relief he presented. If counsel did a more thorough job by citing precedent case law to back up his arguments, the proceedings may have turned out differently.

**Ground Eight:**  Petitioner's constitutional rights were violated under the Sixth Amendment since a judge made the determination to give him max/consecutive sentences, not a jury.

**Supporting Facts:**  Petitioner was given the max/consecutive sentences under a felony of the first degree. The 129th General Assembly passed House Bill 86 on September 30, 2011, and their interpretation of HB 86 was that first time offenders receive non-maximum/concurrent sentences.

**Ground Nine:**  The Appellate District misapplied sufficiency of the evidence standard and should have applied the "No Evidence" standard.

**Supporting Facts:**  There was no evidence in petitioner's case to convict him on any of the 16 counts, and the Second Appellate District misapplied established federal law under the "No Evidence" standard as set by *Thompson*.

(Petition, ECF No. 1)

# ANALYSIS

**Ground One:  Insufficient Evidence**

In his first ground for relief, Cox asserts he was convicted on insufficient evidence.  The Warden does not argue that merits review is barred by any procedural defense (Return of Writ, ECF No. 6, PageID 811), so the Court turns directly to the merits.

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia*, 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders,* 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt.  *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . .  This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *United States v. Paige,* 470 F.3d 603, 608 (6th Cir. 2006);

*United States v. Somerset,* 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007). This rule was recognized in Ohio law at *State v. Jenks,* 61 Ohio St. 3d 259 (1991). Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt. *In re Winship, supra.*

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. *See United States v. Hilliard,* 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. *See* 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. 2009). In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer,* 541 F.3d 652 (6th Cir. 2008); accord *Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011)(en banc).

6

We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith,* 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (per curiam). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. ___, ___, 132 S. Ct. 2060, 2062 (2012)(per curiam).

Cox presented insufficiency of the evidence as his first assignment of error on direct appeal, The Second District decided the claim as follows:

**[*P25]** In his first assignment, Cox contends that the State adduced insufficient evidence to establish the element of force or threat of force to convict him of forcible rape. Additionally, Cox argues in his third assignment that the his [sic] convictions for rape by force or threat of force were against the manifest weight of the evidence. As previously noted, Cox was charged with committing four counts of rape by force or threat of force in Counts VII and IX of the "A" indictment and Counts III and V of the "B" indictment.

**[*P26]** "A challenge to the sufficiency of the evidence differs from a challenge to the manifest weight of the evidence." *State v. McKnight*, 107 Ohio St. 3d 101, 2005-Ohio-6046, 837 N.E.2d 315. "In reviewing a claim of insufficient evidence, '[t]he relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' (Internal citations omitted). A claim that a jury verdict is against the manifest weight of the evidence involves a different test. 'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial

should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Id*.

[**\*P27**] The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). "Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 Ohio App. LEXIS 3709, 1997 WL 476684 (Aug. 22, 1997).

[**\*P28**] This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict. *State v. Bradley*, 2d Dist. Champaign No. 97-CA-03, 1997 Ohio App. LEXIS 4873, 1997 WL 691510 (Oct. 24, 1997).

[**\*P29**] Cox was convicted of four counts rape in violation of R.C. 2907.02(A)(2), in that he engaged in sexual conduct with another, purposely compelling the other person to submit by force or threat of force. In *State v. Eskridge*, 38 Ohio St. 3d 56, 526 N.E.2d 304 (1988), the Ohio Supreme Court held that the force and violence necessary to commit the crime of rape depends upon the age, size and strength of the parties and their relation to each other. With the filial obligation of obedience to a parent, the same degree of force and violence may not be required upon a person of tender years, as would be required were the parties more nearly equal in age, size and strength. In *Eskridge*, the Court noted the age difference and disparity in size between Eskridge and his four-year old daughter who was the victim. Chief Justice Moyer noted the following at page 58 of the Court's opinion:

> We also recognize the coercion inherent in parental authority when a father sexually abuses his child. "***Force need not be overt and physically brutal, but can be subtle and psychological. As long as it can be shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established. *State v. Martin* (1946), 77 Ohio App. 553 [33 O.O. 364, 68 N.E.2d 807]; *State v. Wolfenberger* (1958), 106 Ohio App. 322 [7 O.O. 2d 73]. In the within case,

8

we are confronted with a child being told to do something by an important figure of authority, and commanded not to tell anyone about it. In such a case, we find nothing unreasonable about a finding that the child's will was overcome. Consequently, the forcible element of rape was properly established." *State v. Fowler* (1985), 27 Ohio App. 3d 149, 154, 27 OBR 182, 187, 500 N.E. 2d 390, 395.

[*P30] In *State v. Hiles*, 2d Dist. Montgomery No. 13803, 1994 Ohio App. LEXIS 483, 1994 WL 43102 (Feb. 11, 1994), we sustained the defendant's conviction of six counts of gross sexual imposition in violation of R.C. 2907.05 (A)(1). The victim of Hiles' conduct was his fifteen year old daughter. His sexual conduct included the caressing of her body, including her buttocks and breasts, while he and his daughter were in bed, or on a couch, or the floor. On another occasion, he rubbed her body with lotion including her buttocks and breasts. The daughter testified she never expressed an objection to or resisted her father's behavior, because he threatened to kill her if she reported  the activity. Judge Grady ● wrote on behalf of this court in 1994 Ohio App. LEXIS 483, [WL] at *3:

> At the time of these offenses A.H. was fifteen and sixteen years of age. If the rule of law espoused in *Eskridge* applies at all in this case, it would not apply as it might if the child victim was much younger. The necessary element of force required by R.C. 2907.05(A)(1) is not satisfied by the mere fact that the offender is the victim's parent or by some subjective belief or feeling on the part of the victim that submission is required. Some showing by the State that the offender, through his own acts, compelled the victim to submit to sexual contact by "force or threat of force," however slight, is required.

We affirmed the defendant's convictions in *Hiles* because the victim testified she did not resist him because she feared what he might do to her.

[*P31] The facts in the instant case mirror those set forth in *State v. Marrs*, 2d Dist. Montgomery No. 18903, 2002-Ohio-3300. In *Marrs*, the female victim was eleven years old when the defendant, her step-father, raped her. The defendant was known as a strict disciplinarian in the home and often punished the victim for disobedience by spanking her or grounding her for months  at a time. *Id*. When the rape occurred, the defendant entered the victim's room while she was asleep and took her underwear off. *Id*.

9

The victim woke up while the defendant was performing oral sex on her. *Id*. The victim testified that she did not want the defendant to do what he was doing, but she felt that she had no choice. *Id*. The victim further testified that she was afraid of the defendant because he was in charge of the home, and he was the person who punished her. *Id*. The victim believed that she would get into more trouble if she attempted to stop him. *Id*. The defendant had also told the victim to remain silent regarding the abuse or he would make her look like a liar. *Id*.

**[\*P32]** Like the defendant in *Marrs*, Cox was C.F.'s step-father. C.F. was approximately eleven or twelve years old when Cox committed the three rapes (digital, oral, and penile) in his house on Rosebury Drive when M.C., C.F.'s step-sister, was present but asleep in the same bed. During that incident, Cox removed C.F.'s pants and underwear before he inserted his finger into her vagina. Cox then penetrated C.F.'s vagina with his penis, after which he placed his mouth on her vagina.

**[\*P33]** C.F. testified that she was between the ages twelve and fourteen when Cox forced her to engage in oral sex during the incident in the kitchen at the Orchard Hill apartment. During this incident, Cox blindfolded C.F. and directed her on how to perform after he placed his erect penis in her mouth. Specifically, C.F. testified that "he was telling me to taste it better. I would — I need to use my tongue and like lick it or whatever."

**[\*P34]** Cox was also the primary disciplinarian and father figure in the house. C.F. testified that she was physically afraid of him. C.F. and her brother, A.C., testified that Cox was strict and that when they got into trouble, he punished them by forcing them to stand in a line and pull their pants down. Cox would then "whoop" them with a belt. C.F. testified that there was a rule in the house that the children could not say "no" to Cox. C.F. testified that she did not want Cox to touch her, but she thought she would get into more trouble if she tried to stop him. C.F. further testified that she was afraid of the financial consequences to her family if she attempted to stop Cox from raping her because he was their "livelihood." C.F. testified that Cox used to say "[m]y way or the highway" because  he was the "ruler" of the house. Moreover, C.F. testified that on occasion, she attempted to hint to her mother regarding the abuse that was being inflicted upon her by Cox. C.F. testified that her mother would always tell Cox about the hints, and thereafter, her punishments would increase in severity.

**[\*P35]** Construing the evidence presented in a light most

favorable to the State, as we must, we conclude that a rational trier of fact could find all of the essential elements of the crime of rape to have been proved beyond a reasonable doubt, including that Cox compelled C.F. to submit by force or threat of force. Cox's convictions are supported by legally sufficient evidence.

*State v. Cox, supra.*

Cox also presented an insufficiency of the evidence claim as his second assignment of error on direct appeal. The Second District decided that claim as follows:

**[\*P41]** In his second assignment, Cox asserts that the State presented insufficient evidence of penile penetration to satisfy the sexual conduct element in Count IX of the "A" indictment. Specifically, Cox argues that C.F.'s testimony demonstrates that she was unsure and confused regarding whether Cox inserted his penis into her vagina. Thus, Cox asserts that, pursuant to the standard we set forth in *State v. Lucas*, 2d Dist. Montgomery No. 18644, 2001-Ohio-1350, C.F.'s testimony about the vaginal rape that occurred at Rosebury was insufficient to establish that penile penetration occurred. In his fourth assignment, Cox contends that the jury's finding that he vaginally raped C.F. using his penis was against the manifest weight of the evidence.

**[\*P42]** R.C. 2907.01(A) states as follows:

(A) "Sexual conduct" means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. *Penetration, however slight, is sufficient to complete vaginal or anal intercourse.*

**[\*P43]** *Lucas* involved a charge of vaginal rape. 2d Dist. Montgomery No. 18644, 2001-Ohio-1350. The evidence showed that the defendant had rubbed his penis across the victim's vaginal area. We held that the evidence was insufficient to show penetration, and that in order to prove vaginal rape there must be evidence that the force of the object caused the labia, which form the outer lips of the victim's vagina, to spread. *Id.* Absent that, and depending on the circumstances, only attempted vaginal rape is shown.

**[\*P44]** In the instant case, C.F. testified as follows regarding the

penile rape that occurred at Rosebury Drive while her step-sister was present in the bed but sleeping:

The State: With respect to he [Cox] put his fingers inside of you, and then you said he also used his penis. Was he dressed or not dressed?

C.F.: He had his pants unbuttoned. Or his pants like he [sic] penis was out.

Q: I'm sorry.

A: His penis was out, but he had his pants on still a little bit, I think.

Q: And do you remember whether his penis was soft —

A: It was hard.

Q: It was hard. And what did you do with his penis?

A: He tried to put it inside me but being so young, I guess it didn't exactly work out that way.

Q: Okay. So he tried to put it inside. Okay. *I'm going to ask you a couple more questions about what you mean by that.* Did his penis make contact with your vagina?

A: Yes.

Q: *Did he at any point start pushing it in your vagina?*

A: *He tried.*

Q: *Did it get in your vagina at all?*

A: *I mean a little bit but it — I was so small as a kid, I mean I don't know. I don't —*

Q: It —

A: *It did. It — he tried, but it didn't go all the way in.*

Q: *So it got in a little bit.*

A: *Yes.*

Q: And how did that feel for you?

A: It didn't feel good. It hurt.

Q: Worse than the fingers?

A: Yes.

[*P45] Penetration of the vaginal cavity requires introduction of an object from without, which necessarily implies some forceful spreading of the labia majora. The penetration need only be "slight." R.C. 2907.01(A). Therefore, if the object is introduced with sufficient force to cause the labia majora to spread, penetration has occurred. C.F.'s testimony, if believed, is sufficient to permit the jury to reasonably conclude that Cox's conduct in inserting his penis "a little bit" into C.F.'s vagina necessarily caused the labia majora to spread. C.F.'s testimony was not confusing nor was she unsure whether Cox had penetrated her vagina with his penis. C.F. was only explaining that because she was young and small when the rape occurred, Cox was only able insert his penis a little bit into her vagina. C.F.'s testimony is legally sufficient to establish vaginal penetration to support Cox's's [sic] conviction for rape. *Lucas*, 2d Dist. Montgomery No. 18644, 2001-Ohio-1350.

 [*P46] Further, Cox's conviction for rape is not against the manifest weight of the evidence. The trial court did not lose its way simply because it chose to believe C.F. who affirmatively testified that Cox penetrated her vagina with his penis while at his house on Rosebury Drive. Having reviewed the entire record, we cannot clearly find that the evidence weighs heavily against a conviction, or that a manifest miscarriage of justice has occurred.

 [*P47] Cox's second and fourth assignments of error are overruled.

*State v. Cox, supra.*

To prevail on his First Ground for Relief, Cox must show that the Second District's decision, the last reasoned state court decision on this claim, was an objectively unreasonable application of clearly established United States Supreme Court precedent, in this case, *Jackson v.*

13

*Virginia*, *supra*. Cox does not quarrel with the law the Second District applied and in fact *State v. McKnight, supra,* relied on by Judge Donovan, is a correct restatement of the *Jackson* standard.

Cox principally faults the Second District for reviewing only the testimony of the complaining witness, C.F., and not the entire record (Response to Return, ECF No. 10, PageID 1640). This argument confuses the fundamental difference between a sufficiency of the evidence claim, which is a matter of constitutional law under the Fourteenth Amendment, and a manifest weight of the evidence claim, which arises only under state law. The *Jackson* standard, followed in *McKnight* and by the Second District here, is whether there is any evidence which, if believe by the jury and without weighing it against opposing evidence, is sufficient – that is, testimony to all of the elements of the crime(s) by a person with sufficient knowledge of what happened to testify. Judge Donovan was perfectly correct in focusing on the victim's testimony because the testimony of a victim alone can be sufficient evidence, especially in a sexual misconduct case where the behavior is likely to have been carried out in secret.

> "[T]his Court has long held that the testimony of the victim alone is constitutionally sufficient to sustain a conviction." *Tucker v. Palmer*, 541 F.3d 652, 658 (6th Cir. 2008), *citing United States v. Terry*, 362 F.2d 914, 916 (6th Cir. 1966) ("The testimony of the prosecuting witness, if believed by the jury, is sufficient to support a verdict of guilty."); see also *O'Hara v. Brigano*, 499 F.3d 492, 500 (6th Cir. 2007) (holding that victim's testimony that habeas petitioner abducted her and raped her was constitutionally sufficient to sustain conviction despite lack of corroborating witness or physical evidence); *United States v. Howard*, 218 F.3d 556, 565 (6th Cir. 2000) (holding that even if the only evidence was testimony of the victim, that is sufficient to support a conviction, even absent physical evidence or other corroboration); *United States v. Jones*, 102 F.3d 804, 807 (6th Cir. 1996) (noting that there is sufficient evidence to support a conviction even if the "circumstantial evidence does not remove every reasonable

14

hypothesis except that of guilt") (internal quotation marks omitted).

*Bohannon v. Warden*, 2013 U.S. Dist. LEXIS 148355, *31-32 (S.D. Ohio Oct. 4, 2013) (Merz, M.J.)

Cox's other argument is that it is somehow a violation of the Fifth Amendment privilege against self-incrimination for the Warden to mention that he himself did not testify (Response, ECF No. 10, PageID 1641-43, citing Return of Writ, Doc. No. 6, at PageID 809 and 821-22.) This argument evinces a misunderstanding of the Fifth Amendment privilege. It is certainly true that a criminal defendant has the right not to testify at trial and no comment may be made on the exercise of that right. In fact, it would be reversible error to call a criminal defendant to the stand and force him or her to claim the privilege in the presence of the jury. But there are costs to the exercise of the privilege. If the defendant is the only other eyewitness to the alleged crime besides the victim and he or she elects not to testify, then the jury will hear only the victim's side of the story. The defendant is not entitled to claim that a victim's testimony is not credible on the basis of hypothetical testimony he or she could have given but did not give because of exercising the Fifth Amendment right not to testify.

In this case Cox points to no reference by the prosecutor in the presence of the jury to his failure to testify. That is quite different from pointing out to appellate and habeas courts that the defendant was a witness but did not take the stand to defend himself.

The Second District's decision is an objectively reasonable application of *Jackson, supra.*

In the Return of Writ, the Warden assumed Cox was not challenging his conviction on the count charging sexual misconduct with another child, the count that was severed from trial on the other counts, on Cox's motion. In his Response, Cox says that is not so. He admits pleading guilty to that count, but claims his plea was involuntary and should be set aside (Response, ECF

15

No. 10, PageID 1643-45).  However, because Cox never raised that claim in the state courts and now has no state court forum in which he could raise it, the claim is procedurally defaulted.

The First Ground for Relief should therefore be dismissed with prejudice.

**Ground Two:  Confrontation Clause/Right to Present a Defense**

In his Second Ground for Relief, Cox claims his rights under the Confrontation Clause were violated when (1) his counsel was limited in the questions he could ask about herpes, and (2) he was unable to call Detective Mitchell to testify.  While Cox has labeled this as a Confrontation Clause claim, he argues it as a right to present a complete defense which is also protected by the Sixth Amendment.  There is no actual Confrontation Clause presented because the State did not present any testimonial statements which Cox did not have the opportunity to confront.

**Sub-claim One:  The Herpes Defense**

The first part of Ground Two – the herpes defense – was presented as the eighth assignment of error on direct appeal.  The Second District decided the claim as follows:

> [*P69]  Cox's eighth assignment of error is as follows:
>
> [*P70]  "THE TRIAL COURT ERRED IN LIMITING THE USE OF EVIDENCE OF THE APPELLANT WITH HERPES AND THE LACK OF SUCH DISEASE IN THE COMPLAINANT."
>
> [*P71]  In his eighth assignment, Cox contends that the trial court erred when it limited him from introducing evidence regarding the

16

fact that he was infected with herpes and passed it along to women with whom he had sex, but did not give it to C.F.

[*P72]  Upon review, the record establishes that Cox was permitted to thoroughly explore the topic of his herpes condition during trial. Specifically, defense counsel called Dr. Jodi Van Jura who testified that Cox tested positive for herpes Types 1e and 2 in June of 2012. Defense counsel also elicited testimony from G. that she was positive for herpes Type 2 which she stated that she had contracted prior to 2007. Defense counsel questioned the defendant's current wife, who testified that she, too, tested positive for the herpes virus. Lastly, defense counsel was permitted to elicit testimony from Dr. Lori Vavul-Roediger that C.F. had tested negative for the herpes virus on June 7, 2010. Clearly, the trial court did not prevent defense counsel from making the argument to the jury that Cox must not have sexually abused C.F. because she wasn't infected with the herpes virus.

[*P73]  Upon review, we conclude that there is no evidence in the record which establishes that the trial court improperly limited defense counsel's ability to elicit testimony from the witnesses regarding Cox's herpes infection and those he may have or may have not passed it along to through sexual conduct.

[*P74]  Cox's eighth assignment of error is overruled.

*State v. Cox, supra*.

In his Response, Cox complains of limitations placed on the scope of the questions he was allowed to ask Georgetta Cox about her herpes infection (ECf No. 10, PageID 1646, citing to Tr. Tran. Pp. 317-25, PageID 1158, et seq..)  At PageID 1158, defense counsel asked Georgetta Cox if she had herpes.  This elicited an objection and a lengthy sidebar discussion about whether the defense had provided appropriate discovery about this issue.  After the sidebar, Judge Tucker overruled the objection and allowed the witness to answer yes, that she did indeed have herpes (*Id.*  at PageID 1166).  That was Mr. Lennen's last question of this witness; Judge Tucker allowed her to answer the only question that was put to her about herpes.  Cox cites to no other place in the record where Mr. Lennen's questioning of witnesses about herpes

17

was limited.  In contrast, the Second District cites several other pieces of evidence on the herpes defense which Cox was able to present. Cox has been provided with the transcript of the trial.  If there are other places in the record where his counsel was improperly limited on this topic, he should have cited them to the Court.  In his Brief on appeal, assisted by counsel, he also does not provide any record references to which the Second District or this Court could refer.

In sum, Cox has not shown any unconstitutional limitations were placed on his presentation of a defense.  The Second District's decision on this point is an objectively reasonable application of Supreme Court precedent on the right to present a defense.  This portion of the Second Ground for Relief is without merit.


### Sub-claim Two:  The Absence of Detective Mitchell


In the second part of Ground Two, Cox claims his rights under the Confrontation Clause were violated when Detective Mitchell was excused from testifying because of illness.

This claim was not presented to the state courts and Respondent asserts that it is therefore procedurally defaulted (Return, ECF No. 6, PageID 804).  Cox admits the claim was not presented to the state courts, but asserts he can show excusing cause and prejudice in that his attorney provided ineffective assistance of trial counsel by not "pressing" for Mitchell's appearance (Response, ECF No. 10, PageID 1651-52).

The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual

> prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000).  That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982).  Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review.  *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000)(citation omitted); *Murray v. Carrier*, 477 U.S. 478, 485 (1986);  *Engle*, 456 U.S. at 110;  *Wainwright*, 433 U.S. at 87.  *Wainwright* replaced the "deliberate bypass" standard of *Fay v. Noia*, 372 U.S. 391 (1963).  *Coleman*, 501 U.S. at 724.

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
> . . . .
>
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).

>Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
>Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); accord, *Hartman v. Bagley,* 492 F.3d 347, 357 (6th Cir. 2007), *quoting Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002). The applicable procedural rule here is the very basic one in our adversary system of justice: courts will not decide claims that have not been presented to them. The Ohio courts could not decide the claim about Detective Mitchell because it was never presented to them. The default is final because there is no Ohio forum in which the claim could now be presented.

A habeas petitioner "can overcome a procedural default by showing (a) cause for the default and (b) actual prejudice from it." *Hall v. Vasbinder,* 563 F.3d 222, 236 (6th Cir. 2009); *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004), *quoting Murray v. Carrier*, 477 U.S. 478 (1986).

Attorney error amounting to ineffective assistance of counsel can constitute cause to excuse a procedural default. *Murray v. Carrier,* 477 U.S. 478, 488 (1985); *Howard v. Bouchard,* 405 F.3d 459, 478 (6th Cir. 2005); *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999); *Gravley v. Mills,* 87 F.3d 779, 785 (6th Cir. 1996). However, *Murray v. Carrier* also holds that the exhaustion doctrine "generally requires that a claim of ineffective assistance of counsel be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default in federal habeas proceedings." 477 U.S. at 489; *See also Ewing v. McMackin*, 799 F.2d 1143, 1149-50 (6th Cir. 1986). The ineffective assistance claim cannot be

presented as cause if it was procedurally defaulted in the state courts, unless one of the standard excuses for that procedural default exists, to wit, actual innocence or cause and   prejudice. *Edwards v. Carpenter*, 529 U.S. 446 (2000).

Because ineffectiveness in not pressing hard enough for Mitchell's attendance would have been an ineffective assistance of trial counsel claim that could be litigated on the appellate record, it was required to be raised there or be barred later by *res judicata*.[3]  Ohio's doctrine of *res judicata* in criminal cases, enunciated in *State v. Perry,* 10 Ohio St. 2d 175 (1967), is an adequate and independent state ground.  *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007); *Buell v. Mitchell*, 274 F.3d 337 (6th Cir. 2001); *Coleman v. Mitchell*, 268 F.3d 417 (6th Cir. 2001); *Byrd v. Collins*, 209 F.3d 486, 521-22 (6th Cir. 2000); *Rust v. Zent,* 17 F.3d 155, 160-61 (6th Cir. 1994)(citation omitted); *Van Hook v. Anderson*, 127 F. Supp. 2d 899, 913 (S.D. Ohio 2001).

Cox raised ineffective assistance of trial counsel on direct appeal, but only claimed Mr. Lennen was ineffective for his handling of Dr. Miceli's testimony and not for failing to press harder to obtain Mitchell's testimony (State Record, ECF No. 5, PageID 438.)  Cox cannot excuse failing to raise this sub-claim by showing Lennen provided ineffective assistance of trial counsel because that issue was not properly raised in the state courts.  Cox's claim with respect to Mitchell is therefore procedurally defaulted.

Since the two sub-claims in Ground Two are either without merit or procedurally defaulted, Ground Two should be dismissed with prejudice.


**Ground Three:  Cumulative Error**

---

[3] It is further noted that Cox did not raise the instant claim in his petition for post-conviction relief (ECF No. 5, PageID 614-27).

In his third Ground for Relief Cox asserts that numerous errors at trial, while perhaps harmless in themselves, added up to denying him a fair trial.  Cox asserts that he presented this as his Ninth Assignment of Error on direct appeal (Response, ECF No. 10, PageID 1654).  The Second District Court of Appeals decided that claim as follows:

[*P75]   Cox's ninth assignment of error is as follows:

[*P76]  "CUMULATIVE ERRORS REQUIRE THE REVERSAL OF THIS CONVICTION."

[*P77]  In his ninth and final assignment, Cox argues that the he did not receive a fair trial as a result of the effect of cumulative errors which occurred during trial. In addition to the errors he has already assigned and argued, Cox asserts that he was denied a fair trial in light of "various juror problems" and the loss of Ms. Brockert's notes regarding C.F.'s initial disclosure of sexual abuse by Cox.

[*P78] A. Juror Issues

[*P79]  Initially, Cox notes that defense counsel took issue with one of the potential jurors "poisoning" the jury pool. Specifically, defense counsel was concerned with potential juror number three, who admitted that she had seen the case covered on the local news. When asked if she had formed any opinions on the case, she stated "Obviously."

[*P80]  While not a simple "yes" or "no" response, the potential juror's reply did not "poison" the jury. While indicating that she had formed an opinion about the case, her response was ambiguous and certainly was without elaboration. The specifics of what the potential juror had seen on the news and her personal feelings were discussed at sidebar out of the hearing of the other potential jurors. After the sidebar, the potential juror was excused, and the record is devoid of any evidence that her comment "poisoned" the jury pool.

[*P81]  Next, Cox argues that he was prejudiced when the trial judge had observed a young lady mouthing words to C.F. from the rear of the courtroom. As a result, the judge cleared the courtroom and questioned the young lady about what she was doing. The young lady stated that she was a friend of C.F.'s and was there for moral support. When the jurors returned to the courtroom, the

judge questioned the jury regarding whether they had heard any conversation coming from the rear of the courtroom. A female juror, Number 6, informed the trial court that she had, and the judge questioned her away from the rest of the jurors. Number 6 stated that she had observed a young lady mouthing the words "it's okay" or "be strong" to the victim, C.F. Number 6 further stated that what she had observed would not affect her ability to be impartial nor would she consider it for any reason while deliberating. Neither party objected to Number 6 remaining on the jury, and the judge banned C.F.'s friend from the courtroom for the remainder of the trial.

[*P82]  The last juror issue occurred when the same juror, Number 6 , went out to dinner during the trial and was accidentally exposed to information about the case. The next day, Number 6 informed the bailiff, and the judge questioned her in chambers. Number 6 informed the judge that what she heard prevented her from being fair and impartial. Number 6 stated that she had not talked to any of the other jurors regarding what she heard about the case. The trial court excused her, and neither party objected.

[*P83]  Other than pointing out the "juror issues" that occurred at trial, Cox fails to establish that any resulting prejudice occurred. Moreover, in cases involving outside influences on jurors, trial courts are granted broad discretion in assessing the impact and determining the appropriate remedy. *State v. Williams,* 2d Dist. Montgomery No. 22126, 2008-Ohio-2069, citing *State v. Phillips,* 74 Ohio St.3d 72, 1995 Ohio 171, 656 N.E.2d 643 (1995). In all three incidents, the trial court acted discreetly and decisively, questioning each juror outside of the presence of the others, and excusing the seated juror when she could not remain impartial. In this manner, the trial court attempted to insure that the remaining jurors listened to only the evidence presented during the trial and were not affected by outside influences. Accordingly, there is no basis to find that these incidents affected Cox's right to a fair trial or that he suffered prejudice as a result.

* * *

[*P91]  Finally, turning to Cox's cumulative error argument, separately harmless errors may violate a defendant's right to a fair trial when the errors are considered together. *State v. Madrigal,* 87 Ohio St.3d 378, 2000-Ohio-448, 721 N.E.2d 52. In order to find 'cumulative error' present, we must first find that multiple errors were committed at trial. *Id.* at 398, 721 N.E.2d 52. We must then find a reasonable probability that the outcome of the trial would have been different but for the combination of the separately

harmless errors. *State v. Thomas*, Clark App. No. 2000-CA-43, 2001-Ohio-1354." *State v. Kelly*, 2d Dist. Greene No. 2004-CA-20, 2005-Ohio-305, ¶ 33. "Where no individual, prejudicial error has been shown, there can be no cumulative error. *State v. Blankenship* (1995), 102 Ohio App.3d 534, 557, 657 N.E.2d 559." *State v. Jones*, 2d Dist. Montgomery No. 20349, 2005-Ohio-1208, ¶ 66.

[*P92]  In light of our foregoing analysis, we find that Cox has failed to establish that any errors occurred in the instant case. *State v. Moreland*, 50 Ohio St.3d 58, 69, 552 N.E.2d 894, 905 (1990). Thus, we fail to see how the absence of error can constitute cumulative error. *Id.*

[*P93]  Cox's ninth and final assignment of error is overruled.

*State v. Cox, supra.*

The Warden argues that cumulative error is not a claim cognizable in federal habeas corpus, i.e., that a habeas petitioner cannot cumulate errors to show a constitutional violation (Return, ECF No. 6, PageID 823).

Federal habeas corpus is available only to correct federal constitutional violations.  28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983). To prevail under 28 U.S.C. § 2254(d)(1), a petitioner must show that the state courts' decisions are contrary to or an objectively unreasonable application of clearly established Supreme Court precedent.  *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).

Cox asserts the relevant Supreme Court precedent is *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974), but *Donnelly* is not about analyzing cumulative trial error, but the accumulated effect of disparate instances of prosecutorial misconduct.  He also cites *Brecht v. Abrahamson*, 507 U.S. 619 (1993), adopting the harmless error standard from *Kotteakos v. United States*, 328 U.S.

24

750 (1946), and overruling the "harmless beyond a reasonable doubt" standard of *Chapman v. California*, 386 U.S. 18 (1967). *Brecht* is not about cumulating trial court error to show a constitutional violation, but assessing whether error is harmless or not.

Cox also asserts the Sixth Circuit has recognized a cumulative error ground for habeas relief. (Response, ECF No. 10, PageID 1655, citing *Keith v. Mitchell*, 455 F.3d 662 (6th Cir. 2006), and *Lorraine v. Coyle*, 291 F.3d 416 (6th Cir. 2002). To the contrary, the Warden cites the specific language in *Lorraine* which holds "The Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Id.* at 447. The Warden is correct that Cox's "cumulative error" claim does not state a claim upon which habeas corpus relief can be granted.

As part of this Ground for Relief, Cox claims that his jury was tainted by extraneous influence. The Second District considered and rejected this claim in deciding the Ninth Assignment of Error. *State v. Cox, supra*, ¶¶ 78-83. Juror Number 6 heard a news story prejudicial to Cox's case and was excused from further service; there was no evidence that she told other jurors what she had heard. Cox's complaint is that the judge did not voir dire the other jurors to determine whether they had heard the same story independent of Juror Number 6, i.e. directly from the media.

The relevant Supreme Court precedent is *Smith v. Phillips*, 455 U.S. 209, 215-17 (1982), which held that the defendant has the burden to show that there has been actual prejudice from some outside contact. Here, Cox has not met the initial burden of showing that any of the others jurors saw the adverse coverage. Judge Tucker gave the jurors the required instruction that they were not to obtain any information about the case from the media or elsewhere outside the courtroom and this Court must presume they followed that instruction.

As a second part of this Ground for Relief, Cox complains of the admission in evidence of Exhibits 1(a) and 1(b). The Warden asserts this sub-claim is procedurally defaulted because it was never presented to the state courts (Return, ECF No. 6, PageID 801, 804). Cox responds (without a record citation) that his trial attorney objected, but that the claim was omitted on appeal, amounting to ineffective assistance of appellate counsel (Response, ECF No. 10, PageID 1658-61.)  As noted above, ineffective assistance of counsel can constitute excusing cause but must itself be presented to the state courts for initial decision.  Under Ohio law, the proper place to submit a claim of ineffective assistance of appellate counsel is in an application to reopen the appeal under Ohio R. App. P. 26(B).  Cox, through counsel other than the attorney who represented him on direct appeal, filed a Rule 26(B) application (State Court Record, ECF No. 5, PageID 712-26).  However, failure to raise admission of Exhibits 1(a)( and 1(b) was not one of the omitted assignments of error raised in the 26(B) application.  Cox has therefore procedurally defaulted on this sub-claim.

The next sub-claim Cox raises is witness tampering.  The Second District dealt with this claim, noting that Judge Tucker had questioned the person who was mouthing words to encourage C.F. as to what she said and why, then questioned the jurors if they had heard anything,[4] then excluded the person from the courtroom.  Cox claims the spectator perjured herself when she told Judge Tucker that she was just being encouraging, but offers no proof of that assertion.  He claims the Second District erred in not applying the *Chapman v. California* beyond a reasonable doubt standard, but the applicable standard is from *Brecht*, supra, and in any event the Second District found no error in the way Judge Tucker handled the matter.  Cox has not shown the Second District's decision on this point was contrary to or an objectively unreasonable application of Supreme Court precedent.

---

[4] Only Juror No. 6 had heard anything and she was eventually excused.

26

Cox's last sub-claim relates to notes Jennifer Brockert took when the victim first told her about the abuse.  The Second District considered this claim on direct appeal and decided:

### [*P84] B. Loss of Brockert's Handwritten Notes

[*P85] Cox asserts that he was prejudiced by the State's loss of Brockert's handwritten notes pertaining to C.F.'s initial disclosure of sexual abuse. Cox filed a motion to dismiss based on the lost evidence. The trial court held a hearing on Cox's motion on October 4, 2012, prior to trial. Brockert, Officer Nicholas Bell, and Detective William Ring testified at the hearing.

[*P86] Brockert testified that she took handwritten notes when she initially spoke with C.F. about the sexual abuse she had suffered. Brockert stated that she used the notes during her meeting with Officer Bell in order to refresh her memory regarding the details of what C.F. had told her. Brockert testified that there was nothing exculpatory or anything that would exonerate Cox in her notes. After speaking with Officer Bell, Brockert testified that she drafted a written statement taken directly from her handwritten notes. Brockert testified that she did not include any information in her written statement that was not in her notes. Brockert gave the notes to Detective Mitchell, and kept a copy for herself. Brockert, however, lost her copy of the notes before trial, and the Miamisburg Police Department was also unable to locate the originals in the case file, records, or the property room.

[*P87] The state's failure to preserve materially exculpatory evidence violates a defendant's due process rights under the Fourteenth Amendment to the United States Constitution. The burden rests with the defendant to prove that the evidence in question was materially exculpatory. Such evidence is deemed materially exculpatory if "there is a 'reasonable probability' that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. State v. Grigley, 2d Dist. Montgomery No. 21632, 2007-Ohio-3159, citing State v. Durnwald, 163 Ohio App.3d 361, 2005-Ohio-4867, 837 N.E.2d 1234 (6th Dist.).

[*P88] In contrast, evidence is not materially exculpatory if it is merely potentially useful. Potentially useful evidence indicates that the evidence may or may not have incriminated the defendant. The failure to preserve evidence that by its nature or subject is merely potentially useful violates a defendant's due process rights only if the police or prosecution acted in bad faith. The term "bad faith"

generally implies something more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. *Id.*

[*P89] Our standard of review on the ruling regarding the lost notes is an abuse of discretion. An "[a]buse of discretion" has been defined as an attitude that is unreasonable, arbitrary or unconscionable. *Huffman v. Hair Surgeon, Inc.,* 19 Ohio St.3d 83, 87, 19 Ohio B. 123, 482 N.E.2d 1248, 1252 (1985). It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary. A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue *de novo*, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result. *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.,* 50 Ohio St.3d 157, 167, 553 N.E.2d 597 (1990).

[*P90] Upon review, we conclude that the trial court did not abuse its discretion when it overruled Cox's motion to dismiss based on the failure of the State to produce Brockert's handwritten notes outlining C.F.'s initial narrative about her sexual abuse. In fact, the record establishes that the notes were simply misplaced. Brockert testified that there was nothing in the notes that was exculpatory or exonerated Cox. The record establishes that Cox failed to demonstrate that the notes were anything more than *potentially* useful. Significantly, Cox also failed to establish that the State lost the notes as a result of bad faith. Absent bad faith, the trial court properly found that no due process violation occurred and hence correctly overruled Cox's motion to dismiss.

*State v. Cox, supra.*

Cox's theory about the notes is that they would have provided a record of an account by the victim which would have been inconsistent with her trial testimony and they would therefore have been useful for impeachment. The defense felt so strongly about these notes that it sought dismissal of the case when they were not produced. Judge Tucker held a hearing on that motion which is reflected in the Second District's decision.

28

Both Brockert and the victim testified.  Despite this, Cox continues to claim there was a Confrontation Clause violation in not producing the notes.  However, he cites no authority for that proposition.  The Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant has a prior opportunity for cross-examination…" *Crawford v. Washington,* 541 U.S. 36, 53-54 (2004). There are no Confrontation Clause precedents known to the undersigned which find a violation because defense was not given material with which to impeach a witness.  Rather, the Confrontation Clause prohibits the admission in evidence of testimonial statements made outside the courtroom and not subject to cross-examination.

The correct body of law under which to analyze this claim is that which starts with *Brady v. Maryland*, 373 U.S. 83 (1963), which held the State has a duty to produce exculpatory evidence in a criminal case.  If the State withholds evidence and it is material, the conviction must be reversed.  . To achieve this goal, "*Brady* held 'that the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Kyles v. Whitley*, 514 U.S. 419, 432 (1995) (quoting *Brady*, 373 U.S. at 87).   *Brady* extends to impeaching evidence.  *Strickler  v. Greene*, 527 U.S. 263 at 281-82 (1999).

However, the State cannot produce what it does not have or cannot find.  After extensive inquiry, Judge Tucker found that was the case here.  When dealing with the failure of the state to preserve evidence which might have exonerated the defendant, there is no due process violation unless the defendant can show bad faith on the part of the police. *Arizona v. Youngblood*, 488 U.S. 51, 57 (1988).  Cox faults the second district for not citing any federal case law, but when a state court decides a federal constitutional claim on the merits, the burden is on the habeas

29

petitioner to show that it is contrary to or an objectively unreasonable application of Supreme Court precedent. See *Harrington v. Richter, supra*. Cox has failed to do so.

Both because cumulative error is not a cognizable federal habeas corpus claim and because Cox has not shown constitutional error in the Second District's decision of the sub-claims, the Third Ground for Relief should be dismissed with prejudice.

### Ground Four: Ineffective Assistance of Trial Counsel

In his Fourth Ground for Relief, Cox asserts he received ineffective assistance of trial counsel in that his trial attorney (1) allowed the testimony of Dr. Miceli, (2) failed to make a more thorough investigation of the herpes virus, (3) did not force Judge Tucker to force Detective Mitchell to testify, (4) failed to call a work-records witness to show Cox had an alibi, and (5) performed deficiently during plea bargaining.

The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both

deficient performance and prejudice.  *Berghuis v. Thompkins,* 560 U.S. 370, 389 (2010), *citing*

*Knowles v. Mirzayance,* 556 U.S.111 (2009).

      With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . .  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance;  that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

      As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694.  *See also Darden v. Wainwright*, 477 U.S. 168, 184 (1986), *citing Strickland, supra.*; *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998), *citing Strickland, supra*; *Blackburn v. Foltz*, 828 F.2d 1177, 1180 (6th Cir. 1987), *quoting Strickland,* 466 U.S. at 687. "The likelihood of a different result must be substantial, not just conceivable."  *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011), *quoting Harrington v. Richter*, 562 U.S. 86, ___, 131 S. Ct. 770, 792 (2011).

**Sub-claim 1:  Allowing Dr. Miceli's Testimony/Not Hiring a Rebuttal Expert**

Cox claims his trial attorney should not have permitted Dr. Miceli to testify.  On direct appeal, he raised as assignment of error five the admission of her testimony.  The Second District decided that issue as follows:

[*P48]  Cox's fifth assignment of error is as follows:

[*P49]  "AN EXPERT WITNESS MUST DERIVE HER OPINION FROM FACTS OR DATA OF THE PARTICULAR CASE UPON WHICH THE EXPERT BASES AN OPINION OR INFERENCE."

[*P50]  In his fifth assignment, Cox argues that the trial court abused its discretion when it admitted the expert testimony of Dr. Brenda J. Miceli, a clinical child psychologist, who testified at trial regarding the behavioral characteristics of children who have been sexually abused. Specifically, Dr. Miceli testified regarding delayed reporting and partial reporting of sexual abuse in children.

[*P51]  Evid. R. 702 governs the admissibility of expert testimony. It provides:

A witness may testify as an expert if all of the following apply:

(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. * * *

[*P52]  "[T]he Ohio Supreme Court has found that testimony from a psychologist on the behavioral characteristics of sexually abused children is admissible, see State v. Stowers (1998), 81 Ohio St.3d 260, 262, 1998 Ohio 632, 690 N.E.2d 881, and so have we. [State v.Bell, 176 Ohio App.3d 378, 2008-Ohio-2578, 891 N.E.2d 1280 (2d Dist.)]." State v. Rosas, 2d Dist. Montgomery No. 22424, 2009-Ohio-1404, ¶ 41. "What an expert may not do is offer a direct opinion on whether a child is telling the

truth. *State v. Boston* (1989), 46 Ohio St.3d 108, 545 N.E.2d 1220." *Id.,* ¶ 42. ⚓We review the admission of expert testimony under an abuse of discretion standard of review. *See Bell.* In *Bell*, Dr. Miceli was retained by the State "to testify regarding the wide range of behaviors that sexually abused children may exhibit, including internalizing behaviors, externalizing behaviors, and sexualized behaviors." Miceli did not opine on whether the victims were sexually abused by the defendant, and this Court concluded that the trial court did not abuse its discretion in admitting the testimony as follows:

Dr. Miceli simply offered her opinions regarding the wide range of behavioral characteristics displayed by minor victims of sexual abuse. The law clearly permits this kind of expert testimony, and Dr. Miceli did not go beyond permissible boundaries and opine whether these children were in fact abused by Bell. A thorough review of Dr. Miceli's expert testimony establishes that she possessed specialized knowledge that could aid a trier of fact in assessing whether the children actually suffered sexual abuse. *Bell,* ¶ 57.

**[\*P53]** In the instant case, Dr. Miceli testified regarding some of the behaviors that sexually abused children may exhibit, including the tendency to delay the reporting of sexual abuse. Dr. Miceli also offered testimony regarding the tendency of children who have been sexually abused to only provide partial reports of the alleged abuse. Cox argues that Dr. Miceli failed to disclose the facts and data used as a basis for her opinion, as required by Evidence Rule 705. Dr. Miceli, however, did not opine as to whether C.F. had, in fact, been abused. Instead, Dr. Miceli's testimony was limited by the trial court to a specialized overview of particular behavioral characteristics of sexually abused children in order to give the jurors a better understanding of those characteristics. Accordingly, Dr. Miceli's testimony regarding the behavioral characteristics displayed by minor victims of sexual abuse was admissible to aid the jury in assessing whether C.F. actually suffered sexual abuse at the hands of Cox. See *State v. Weber,* 2d Dist. Montgomery No. 25508, 2013-Ohio-3172.

**[\*P54]** There is little doubt that Dr. Micelli possesses extensive formal education and broad, deep experience with sexually abused children. Her testimony here establishes this, and we have previously so found. See *State v. Bell,* 176 Ohio App.3d 378, 2008-Ohio-2578, 891 N.E.2d 1280 (recognizing Dr. Micelli's extensive experience with sexually abused children). After examining the record, we find nothing that would call into question

33

the reliability of her testimony. Her testimony on the behavioral characteristics of sexually-abused children has a reliable basis in the knowledge and experience of the field of psychology, which she has acquired from the classroom and the clinic.

 **[\*P55]** Cox also asserts that the State called Dr. Miceli to testify solely to bolster C.F.'s testimony. There is a distinction "between expert testimony that a child witness is telling the truth," on the one hand, and on the other hand, "evidence which bolsters a child's credibility insofar as it supports the prosecution's efforts to prove that a child *has* been abused." *Stowers,* at 262. Expert testimony is admissible as to the latter. This is evidence that provides "additional support for the truth of the *facts testified* to by the child, or which assists the fact finder in assessing the child's veracity." *Id.* Such testimony "does not usurp the role of the jury, but rather gives information to a jury which helps it make an educated determination." *Id. at 263.* Here, Dr. Miceli's testimony is within permissible bounds. She testified about the behavioral characteristics of sexually abused children in an effort to educate the jury regarding delayed and partial reporting of sexual abuse by children.

 **[\*P56]**  Finally, Dr. Miceli's testimony regarding those defendants who sexually abuse their victims in the presence of another sleeping was also admissible. Specifically, Dr. Miceli testified that she was aware of scenarios such as this and explained that the abuser felt like he had equal control over both children, the victim and the sleeping child. Based on her extensive and specialized knowledge in the area of child sexual abuse, Dr. Miceli's testimony was admissible and relevant because it provided the jury with information regarding the behavior and modus operandi of those who sexually abuse children. Dr. Miceli's testimony also provided the jury with a basis to assess C.F.'s credibility with respect to her testimony that M.C. was sleeping in the same room when Cox raped her.

 **[\*P57]**  Cox's fifth assignment of error is overruled.

*State v. Cox, supra.*

Having complained directly about Dr. Miceli's testimony, Cox also claimed it was ineffective assistance of trial counsel not to object to it, the claim he makes in this sub-claim of Ground Four.  The Second District decided that claim as follows:

34

**[\*P58]**  Cox's sixth assignment of error is as follows:

**[\*P59]**  "APPELLANT'S CONVICTION MUST BE REVERSED DUE TO THE INEFFECTIVE ASSISTANCE OF COUNSEL."

**[\*P60]**  In his sixth assignment, Cox contends that his trial counsel was ineffective for failing to object to Dr. Miceli's testimony.

**[\*P61]**  We review the alleged instances of ineffective assistance of trial counsel under the two prong analysis set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, and adopted by the Supreme Court of Ohio in *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, * * *. Pursuant to those cases, trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland*, 466 U.S. at 688. To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that his errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. *Id.* Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel." (Internal citation omitted). *State v. Mitchell*, 2d Dist. Montgomery No. 21957, 2008-Ohio-493, ¶ 31.

**[\*P62]**  As discussed in the preceding assignment, Dr. Miceli's testimony was admissible under Evid. R. 702 and was not introduced to impermissibly bolster C.F.'s testimony. Moreover, we note that trial counsel did file a pre-trial motion to exclude Dr. Miceli's testimony on September 19, 2012. Evid. R. 703 and 705 were not violated because Dr. Miceli's testimony was properly limited, and she offered no opinion as to the truth of C.F.'s assertions. Given the strong presumption that counsel's performance constituted reasonable assistance, Cox's trial counsel was not required to perform a futile act. *State v. Lodge*, 2d Dist. Greene No. 2004CA43, 2005-Ohio-1908. Moreover, Cox has failed to demonstrate that there is a reasonable probability that but for his counsel's failure to object at trial to Dr. Miceli's testimony under Evid. R. 703 and 705, the result of the case would have been any different.

**[\*P63]**  Cox's sixth assignment of error is overruled.

*State v. Cox, supra.*

The Warden argues that this conclusion by the Second District is an objectively reasonable application of *Strickland* and the Court agrees. It cannot be ineffective assistance of trial counsel to fail to do a futile act or raise a meritless issue. *Krist v. Foltz,* 804 F.2d 944, 946-47 (6th Cir. 1986); *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998); Coley v. Bagley, 706 F.3d 741, 752 (6th Cir. 2013).

Cox responds, however, that that is not the claim of ineffective assistance of trial counsel he is raising. Instead he says he is complaining of "trial counsel's failure to call their own expert witness to rebut and refute the testimony of Dr. Miceli." (Response, ECF No. 10, PageID 1668.) That certainly is not the claim of ineffective assistance of trial counsel that Cox raised in his sixth assignment of error on direct appeal.

In his Petition for post-conviction relief under Ohio Revised Code § 2953.21, Cox did complain that he "wanted an expert on delayed reporting to be hired and so instructed Counsel (Affidavit of Vernon Cox). . ." (State Court Record, ECF No. 5, PageID 573). Judge Tucker rejected this claim, noting that Cox's Affidavit gave no indication of what testimony such an expert would give and without such a statement "there is no way to determine if such testimony would have been different from the testimony provided by Dr. Brenda Miceli. . ." (Order, State Court record, ECF No. 5, PageID 610). The Second District affirmed, stating

> **[*P13]** We also agree with the trial court that Cox's argument about not hiring an expert to testify on delayed sexual-abuse reporting failed to set forth sufficient operative facts to establish substantive grounds for relief. This is so because Cox failed to identify a particular expert who should have been called and failed to set forth what the expert would have said. Without an affidavit identifying what the missing testimony would have been, we cannot conclude that defense counsel provided ineffective assistance in failing to retain an expert. *Cf. State v. Wynn,* 2d

36

> Dist. Montgomery No. 25730, 2014-Ohio-621, ¶ 13 (finding no
> error in denying a post-conviction petition without a hearing where
> the defendant presented no evidence as to what a missing witness's
> testimony would have been).

*State v. Cox*, 2015-Ohio-894, 2015 Ohio App. LEXIS 887 (2nd Dist. Mar. 13, 2015).  On the

merits, this is not an objectively unreasonable application of *Strickland*.

The Warden argues the Court should not reach the merits because Cox procedurally

defaulted on this claim by not appealing to the Supreme Court of Ohio from denial of his petition

for post-conviction relief (Return of Writ, ECF No. 6, PageID 804.)[5]  Cox concedes he did not

appeal to the Ohio Supreme Court but argues at length that he was not required to do so, splitting

his argument between "Exhaustion of State Remedies" (Response, ECF No. 10, PageID 1613-

29) and "Procedural Default and Cause and Prejudice. *Id.*  at PageID 1630-34.

It is clear from reading these sections of the Response that Cox has confused the

requirement of exhaustion and the doctrine of procedural default.  The Return of Writ has a

section labeled "Exhaustion, Fair Presentation, and Waiver" (ECF No. 6, PageID 801-04).  From

this Cox infers that "respondent makes the claim that there are unexhausted claims in his

petition."  (Response, ECF No. 10, 1614.)  However, upon careful examination, the Court finds

that the Warden has not asserted there are any unexhausted claims in the Petition.

The Sixth Circuit has explained the difference between exhaustion and procedural default

as follows:

> As is well-established (although sometimes muddled by courts),
> two types of procedural barriers might preclude federal review of
> claims in a habeas petition. The first type, procedural default, is a

---

[5] The Warden misread this portion of Ground Four as complaining that Mr. Lennen did not object to Dr. Miceli's
testimony, a claim that was pursued to the Ohio Supreme Court on direct appeal.  Cox clarifies in his Response that
he is instead raising here the ineffective assistance of trial counsel claim about expert testimony that he made in
post-conviction (ECF No. 10, PageID 1668.)  The wording of the Fourth Ground as pled is misleading in this
respect.

judicially created rule, grounded in fealty to comity values and requiring federal courts to respect state court judgments that are based on an "independent and adequate" state procedural ground. *Coleman v. Thompson*, 501 U.S. 722, 732, 115 L. Ed. 2d 640, 111 S. Ct. 2546 (1991); *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986) (establishing a four-part test for determining whether a procedural rule is an independent and adequate state ground). In procedural default cases, the state court or courts reject a direct or post-conviction appeal because the defendant failed to comply with some state law or rule concerning timeliness, pleading requirements, sufficient evidence, or the like.

The second type of bar, exhaustion, is similarly grounded in respect for state court procedures, but it is federally mandated by AEDPA, see 28 U.S.C. § 2254(b)(1)(A), (c), and requires petitioners to give state courts a "fair opportunity" to assess petitioners' claims. *O'Sullivan*, 526 U.S. at 844. Often, federal courts will rule that a petitioner's claim is "defaulted" because the petitioner failed to exhaust his remedies and the time for refiling an appeal in the state court has passed. The unexhausted claim is then classified as "procedurally defaulted" and deemed forfeited absent a showing of cause and prejudice. *See In re Cook*, 215 F.3d 606, 607-08 (6th Cir. 2000).

But exhaustion and procedural default are distinguishable in an important sense. A defendant could fail to exhaust a claim without procedurally defaulting if he could return to the state courts to exhaust. Alternatively, as in this case, the defendant could fail to exhaust without defaulting if a clarification in procedural law indicates that he has already taken the necessary action to exhaust. That is, forfeiture by failure to exhaust entails a legal fiction, of sorts. The state court has not rejected an appeal based on a state rule violation; there is no declaration by the state court of an independent and adequate state ground to which the federal court must defer. Instead, the federal court makes a presumption that the state court would reject the appeal on independent and adequate state grounds if the petitioner tried to file it. But, by declaring the claim forfeited, the federal court saves the petitioner and the state court from respectively preparing and rejecting a futile filing. The federal court then views the claim through the lens of procedural default to determine whether there is cause and prejudice to excuse the default. In short, the crux of forfeiture by failure to exhaust is that the federal court's default decision rests upon a presumption about what the state court would do, rather than respect for what a state court actually did.

*Abdur'Rahman v. Bell (In re Abdur'Rahman)*, 392 F.3d 174, 186-187 (6th Cir., 2004)(vacated on other grounds, 545 U.S. 1151 (2005).

The Warden has not argued that any of Cox's claims are unexhausted.  That is, the Warden had not asserted Cox has a remaining state court remedy on any of his claims which he must exhaust before this Court considers his Petition.  Rather, the Warden asserts that Cox has procedurally defaulted on those claims he raised in collateral attacks on his conviction but did not pursue to the Ohio Supreme Court.

Reading the Return of Writ as claiming he had not presented many of his claims at all in the state courts, Cox writes at length about how he did so (Response, ECF No. 10, PageID 1613-25).  At page 13 of his Response, he attempts to justify not appealing to the Ohio Supreme Court on the collateral attacks:

> It is clear in Ohio, that the Ohio Supreme Court hears very few cases, and it would only be logical that since they denied jurisdiction on his direct appeal claiming ineffective assistance of counsel, they would also deny jurisdiction on the same claim of ineffective assistance of counsel in a post conviction appeal.  That appeal would be nothing short of a waste of time and futile; in a sense it would be like "beating a dead horse."  The law, after all, should not require litigants to engage in empty gestures or to perform obviously futile acts.

*Id.* at PageID 1625.

On this point, Cox is wrong.  The Supreme Court of the United States has itself held that failure to present an issue to the state supreme court on discretionary review constitutes procedural default.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)(citations omitted).  "Even if the state court failed to reject a claim on a procedural ground, the petitioner is also in procedural default 'by failing to raise a claim in state court, and pursue that claim through the state's ordinary appellate procedures.'" *Thompson v. Bell*, 580 F.3d 423, 437 (6th Cir. 2009),

citing *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006)(quoting O'Sullivan v. Boerckel, 526 U.S. 838, 846-7(1999)).

Cox cites no case in which appeal to the Ohio Supreme Court on collateral attack had been held to be a futile gesture or a waste of time. He relies on *Harris v. Reed*, 489 U.S. 255 (1989). In that case the Supreme Court applied the plain statement rule of *Michigan v. Long*, 463 U.S. 1032, 1040-1041 (1983), to hold that a state court declining on state procedural ground to decide a federal question presented to it must plainly state its reliance on those grounds in order for the claim to be procedurally defaulted. *Harris* does not apply here because Cox never gave the Ohio Supreme Court a chance to decide his claims on collateral attack. The *Harris* rule does not apply at all if petitioner failed to exhaust state remedies and the court to which petitioner would now be required to present the claims in order to meet the exhaustion requirement would find a procedural bar. In that case, procedural default bars federal habeas review. *Teague v. Lane,* 489 U.S. 288, 297-98 (1989), reiterated in *Coleman*, 501 U.S. 722 at footnote on 734.

Cox's claim of ineffective assistance of trial counsel for failure to hire an expert to rebut or refute Dr. Miceli is both without merit and procedurally defaulted. It should be dismissed with prejudice.

### Sub-claim Two: Insufficient Investigation of Herpes

The only claim Cox presented to the state courts regarding this issue was his claim in post-conviction that Lennen was ineffective for failing to obtain Cox's medical records from Dr. Mark Streibel. Judge Tucker disposed of the claim by concluding, as had the Second District on direct appeal, that Lennen had made a thorough presentation of the herpes defense at trial and

additional evidence would have been unlikely to change the result (Order, State Court Record, ECF No. 5, PageID 609-10.) On appeal, the Second District held:

> [*P10] Cox's argument about his attorney's failure to introduce medical records and testimony from his physician is equally unpersuasive. In his direct appeal, Cox argued that the trial court had erred in limiting evidence that he had herpes, and had transmitted it to other women, and that the victim did not have herpes. *State v. Cox*, 2d Dist. Montgomery No. 25477, 2013-Ohio-4941, ¶ 70-73. In rejecting his argument, this court reasoned:
>
>> Upon review, the record establishes that Cox was permitted to thoroughly explore the topic of his herpes condition during trial. Specifically, defense counsel called Dr. Jodi Van Jura who testified that Cox tested positive for herpes Types 1e and 2 in June of 2012. Defense counsel also elicited testimony from [the victim's mother] that she was positive for herpes Type 2 which she stated that [**10] she had contracted prior to 2007. Defense counsel questioned the defendant's current wife, who testified that she, too, tested positive for the herpes virus. Lastly, defense counsel was permitted to elicit testimony from Dr. Lori Vavul-Roediger that C.F. had tested negative for the herpes virus on June 7, 2010. Clearly, the trial court did not prevent defense counsel from making the argument to the jury that Cox must not have sexually abused C.F. because she wasn't infected with the herpes virus.
>>
>> Upon review, we conclude that there is no evidence in the record which establishes that the trial court improperly limited defense counsel's ability to elicit testimony from the witnesses regarding Cox's herpes infection and those he may have or may have not passed it along to through sexual conduct.
>
> *Id.* at ¶ 72-73.
>
> [*P11] Cox reasons that testimony about him having herpes in 2012 was inadequate to support his defense because his alleged sexual abuse of the victim stopped around 2010. We note, however, that the record contains testimony about Cox having herpes during the relevant time period. The victim's mother

testified that she contracted herpes around 2005 or 2006, which was during the time Cox's sexual abuse allegedly occurred. Cox's current wife, who he met in January 2010 and married about three months later, also testified that she had contracted herpes. She explained that she tested negative before meeting Cox but tested positive about two months into their relationship. Finally, Vavul-Roediger testified that she was told the victim's mother and Cox both had herpes. For that reason, she tested the victim, who tested negative. Vavul-Roediger explained, however, that a person with genital herpes, the type at issue here, is not necessarily contagious unless he or she has an actual sore or lesion and is actively "shedding" the virus. Vavul-Roediger added that the one-year transmission rate between monogamous couples regularly engaging in sexual activity was relatively low. In closing argument, defense counsel told the jury:

> And let's talk about herpes. My client has Herpes Simplex 1 and 2. Without question, contagious. The two people that we know have had sex with my client, presumably since they were married to him in the last ten years, both are positive for the herpes virus. The only person that is alleging sexual contact or conduct with my client that is not positive is [the victim]. Everybody else has it but her. The doctor said that this is only the second time she ran the [herpes] test [on an alleged sexual-abuse victim]. Because Mom was saying, "Look, she's alleging she's being abused by Vernon Cox. You know what? He's got herpes. I've got herpes. Test him." If she's got herpes, there's your evidence. There's your corroboration. There's your smoking gun. That's why they tested. That's why— for the—doctor said second time. It must have been significant to them to test because that child has herpes [sic]. Imagine what the government would be saying today if that child, [the victim], tested positive for herpes. They would tell you that is the smoking gun, without question. How is it any different when it's negative. Everybody else that had sexual conduct with my client got it but her. Maybe she didn't have sexual conduct. Maybe the fact that she's negative means that it does not corroborate her story.

(Trial Tr. Vol. III at 674-675.).

 [*P12]  Because the record contained sufficient evidence about Cox's history of herpes to enable defense counsel to make the foregoing argument, counsel reasonably may have elected, as a matter of trial strategy, not to introduce additional evidence on the

> topic. Testimony and medical records from Cox's physician only
> would have confirmed what the record already reflected. And
> introducing evidence that Cox had transmitted the herpes virus to
> additional women other than his two wives would have reflected
> poorly on his character and potentially done more harm than good.

*State v. Cox*, 2015 Ohio App. LEXIS 887 (2nd Dist. Mar. 13, 2015).

The Second District puts the matter delicately.  To assert that it would have helped the

case of a man on trial for having sex with a minor step-daughter to introduce evidence that he

had given herpes to two other women to whom he was not married (Odell Williams and Tracy

Lee) stretches credulity beyond the breaking point.  As the state court pointed out, Mr. Lennen

had enough evidence to permit him to argue the herpes defense[6] in closing; additional medical

records would not have made a difference.  The application of *Strickland* to this claim was

objectively reasonable and it therefore fails on the merits.  Moreover, the Court need not reach

the merits of this sub-claim because Cox procedurally defaulted by not appealing to the Ohio

Supreme Court.


**Sub-claim Three:  Failure to Force Detective Mitchell to Testify**


Cox has not identified any place in the state court record where this issue was presented

to the state courts.  It is therefore procedurally defaulted.


**Sub-claim Four:  Failure to Submit Work Records to Prove Alibi**


Cox claims that if Lennen had submitted his work records to the jury, it would have

---

[6] The herpes defense was that Cox had given herpes to every woman with whom he had sex since he had been
diagnosed, but the victim, C.F., did not have herpes, so she must not have had sex with Cox.

shown that he was not present when the various acts of sexual misconduct were alleged to have

occurred over the period of a number of years.  Cox presented this claim in his post-conviction

petition and Judge Tucker found neither deficient performance nor prejudice because the records

were only minimally relevant because they "would not rebut Mr. Cox's easy access to C.F."

(Order, State Court Record, ECF No. 5, PageID 609).  The Second District affirmed, holding:

> As for Cox's work records, the trial court reasonably concluded
> that they had minimal relevance because he easily could have
> sexually abused his step-daughter when not at work. In this regard,
> we note (1) that the trial testimony was non-specific about when
> the abuse, which took place over a period of years, had occurred
> and (2) that Cox's own affidavit, which identifies several women
> he claims to have infected with herpes since 2004, refutes the
> notion that his long work hours precluded sexual activity.

*State v. Cox,* 2015 Ohio App. LEXIS 887, ¶ 9 (2nd Dist. Mar. 13, 2015).

The state court conclusions on this sub-claim are an objectively reasonable application of

*Strickland*.  Moreover, Cox has procedurally defaulted this sub-claim by not appealing to the

Ohio Supreme Court.


### Sub-claim Five:  Ineffective Assistance in the Plea Bargaining Process


When Cox presented this sub-claim on appeal from denial of his petition for post-

conviction relief, the Second District refused to reach the merits, holding:

>  [*P15]  Finally, Cox's argument about counsel's performance in
> the plea-bargaining process fails because he did not raise it below.
> His petition for post-conviction relief did not mention plea
> bargaining. Nor was the issue addressed in the affidavits he filed
> below. Therefore, the issue is not properly before us.

*State v. Cox,* 2015 Ohio App. LEXIS 887 (2nd Dist. Mar. 13, 2015).

Ohio has a procedural rule that a litigant may not present on appeal an issue not reserved

for appeal by being presented in the trial court.   *State v. Williams,* 51 Ohio St. 2d 112 (1977)(paragraph two of the syllabus)(*Toledo v. Reasonover*, 5 Ohio St. 2d 22 (1965), approved and followed.)  The Second District enforced that rule against Cox by its plain language in ¶ 15. *State v. Cox*, 2015-Ohio-894.  The rule is an adequate and independent state ground of decision in that it is a usual rule of appellate practice in the United States and is followed in the federal system.  *Singleton v. Wulff,* 428 U.S. 106 (1976); *Ralph Schrader, Inc., v. Diamond International Corp.*, 833 F.2d 1210, 1214 (6th Cir. 1987).

Thus Cox procedurally defaulted on this sub-claim by failing to include it in his petition for post-conviction relief and again by not appealing to the Ohio Supreme Court.

Based on the foregoing analysis, the Fourth Ground for relief should be dismissed with prejudice in its entirety.

**Ground Five:  The Grand Jury Testimony of the Victim**

In his Fifth Ground for Relief, Cox asserts the defense should have been allowed to use C.F.'s grand jury testimony to impeach her at trial.   He raised this claim as his seventh assignment of error on direct appeal and the Second District decided it as follows:

> **[\*P64]**  Cox's seventh assignment of error is as follows:
>
> **[\*P65]**  "GRAND JURY TESTIMONY THAT INDICATES RECENT FABRICATION MAY BE USED TO CROSS-EXAMINE A WITNESS."
>
> **[\*P66]**  In his seventh assignment, Cox asserts that the trial court erred when it refused to allow defense counsel to use C.F.'s grand jury testimony to impeach her during cross-examination with certain sexual acts that she allegedly did not mention at that hearing, specifically the rape and GSI perpetrated by Cox close to her birthday at the house on Rosebury Drive.

[*P67] Prior to trial, the court discussed C.F.'s grand jury testimony in order to address defense counsel's concern that Counts II through V of the "A" indictment were not based on evidence that the grand jury had heard. The record establishes that the trial court and both parties listened to C.F.'s grand jury testimony in chambers. After listening to C.F.'s grand jury testimony, defense counsel agreed that C.F. did mention the rape and GSI which occurred on her ninth birthday at the house on Rosebury Drive. Because C.F. did testify regarding the incident during the grand jury proceeding, defense counsel conceded that it would not be permissible for him to suggest to the jury that she had recently fabricated those allegations of sexual abuse. Accordingly, the trial court did not err when it refused to allow defense counsel to impeach C.F. with her grand jury testimony when she had, in fact, testified before the grand jury regarding the rape and GSI at Rosebury Drive on her ninth birthday.

[*P68] Cox's seventh assignment of error is overruled.

*State v. Cox, supra.*

The Warden defends this Ground for Relief by asserting that there was no request to use the grand jury testimony to impeach, citing Mr. Lennen's concession in that regard (Return of Writ, ECF No. 6, PageID 833-34).

Cox disagrees with this conclusion because, he asserts, "nothing from the record shows that the Ohio Appellate Court ever took the time to hear the Grand Jury testimony of C.F., and yet they still overruled petitioner's claim." But there was no reason for the court of appeals to listen to or read C.F.'s grand jury testimony because that court found Mr. Lennen had agreed there was no inconsistency. In other words, it was not reviewing directly the question of whether there was an inconsistency, once it found Mr. Lennen had conceded there was not. As Cox's attorney, Lennen was acting as his agent in these circumstances and Cox is bound by Lennen's concession.

Cox also argues Lennen made no such concession (Response, ECF No. 10, PageID

46

1674).  This Court has read the relevant statements by Mr. Lennen and concludes that the finding of fact of the court of appeals that he conceded there was no inconsistency is correct (See Trial Tr. Doc. No. 7, PageID 902).

Cox continues by arguing that there was somehow a violation of his Fourteenth Amendment rights by allowing C.F. "to testify in front of the jury that she was nine years old at the time of the alleged abuse. . ."  (Response, ECF No. 1675).  As authority Cox relies on the proposition that it is unconstitutional prosecutorial misconduct to rely on knowingly perjured testimony.  That proposition, while true, is a far cry from the notion that it violates a defendant's constitutional rights not to allow grand jury testimony to be used to show inconsistency when one's counsel concedes there is no inconsistency.

As the Warden properly points out, even if Mr. Lennen had not conceded the absence of inconsistency, this claim would present a purely state evidentiary issue.  Federal habeas corpus is available only to correct federal constitutional violations.   28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983).   "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Cox cites no Supreme Court authority for the proposition that it violates the United States Constitution to refuse to allow a witness to be impeached with arguably inconsistent grand jury testimony.  Rather, such decisions are committed to the sound discretion of the trial judge and even abuse of discretion does not state a constitutional claim.  *Sinistaj v. Burt,* 66 F.3d 804 (6th Cir. 1995).

Cox claims in his Response that his constitutional rights were violated when he was not permitted to be present at the trial court hearing when this issue was resolved (ECF No. 10, PageID 1677-78).  Not only was this issue not presented to the state courts, it was not even pleaded in the Petition.  Cox attempts to excuse this by saying that it is not really a ground for relief, but an argument in support of his claim about impeachment of C.F.  The Court fails to understand the logic:  how does the grand jury testimony become more or less impeaching if Cox is present?  Even assuming Cox had a right to be present, it is a right his attorney could legally and did in fact waive.  And despite all of his other accusations against Mr. Lennen, Cox has not claimed it was ineffective assistance of trial counsel to waive his presence at this hearing.

Ground Five should be dismissed with prejudice.


**Ground Six:  Allowing Dr. Miceli to Testify**


Cox claims in his Sixth Ground for Relief that allowing Dr. Miceli to testify violated his constitutional right to a fair trial.  Cox presented a claim that Dr. Miceli should have been excluded as his fifth assignment of error on direct appeal which the Second District decided that claim as  recounted in its entirety under Cox's Fourth Ground for Relief, supra, which relieves the Court of the need to repeat the state court's decision here.

The Warden argues the claim was not fairly presented as a federal constitutional claim to the state courts (Return, ECF No. 6, PageID 835).  The Court agrees.  There is no mention of a constitutional claim in Cox's direct appeal on this issue.  Even in his Response, he cites *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), as the "bedrock" Supreme Court decision underlying this Ground for Relief (ECF No. 10, PageID 1635).  But *Daubert* is not a

constitutional decision and the Supreme Court has never imposed the *Daubert* rule on the States as a matter of constitutional law.

To preserve a federal constitutional claim for presentation in habeas corpus, the claim must be "fairly presented" to the state courts in a way which provides them with an opportunity to remedy the asserted constitutional violation, including presenting both the legal and factual basis of the claim. *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir.), *cert. denied,* 509 U.S. 907 (1993), overruled in part on other grounds by *Thompson v. Keohane,* 516 U.S. 99 (1995); *Riggins v. McMackin,* 935 F.2d 790, 792 (6th Cir. 1991).

If a petitioner's claims in federal habeas rest on different theories than those presented to the state courts, they are procedurally defaulted. *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *Lorraine v. Coyle,* 291 F.3d 416, 425 (6th Cir. 2002), *citing Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *Lott v. Coyle*, 261 F.3d 594, 607, 619 (6th Cir. 2001)("relatedness" of a claim will not save it).

Cox failed to fairly present this Ground for Relief to the state courts as a claim arising under the United States Constitution.  The claim is therefore procedurally defaulted and should be dismissed with prejudice.


**Ground Seven:  Ineffective Assistance of Appellate Counsel**


In his Seventh Ground for Relief, Cox claims he received ineffective assistance of appellate counsel when his counsel did not do a better job of citing case authority.

As noted above, Cox failed to appeal to the Ohio Supreme Court from denial of his

Application to Reopen under Ohio R. App. P. 26(B).  This Ground for Relief is therefore procedurally defaulted and should be dismissed with prejudice.

## Ground Eight:  Determination of Sentence by the Judge Rather Than the Jury

In his Eighth Ground for Relief, Cox asserts his constitutional rights under the Fourteenth Amendment were violated when the trial judge decided on a maximum sentence instead of allowing that issue to be decided by the jury.

Cox raised something like this claim when he filed his Motion for Resentencing.  In that Motion his First Assignment of Error was "[t]he trial court rendered a void Judgment when the Court failed to State its Findings to impose the Maximum Sentences As to each count of Conviction as Mandatory Required pursuant to Revised Code 2929.14(c) And revised 2929.19(B)(2)((D)."  (Motion, State Court Record, ECF No. 5, PageID 675).  Judge Tucker summarily overruled the Motion and Cox appealed, raising this claim as his First Assignment of Error.  The Second District decided the claim as follows:

> **[\*5]**  In his first assignment of error, Cox contends the trial court erred in imposing statutory maximum sentences. Arguing that his offenses pre-dated *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, Cox claims the trial court was obligated to make certain findings to impose anything more than a statutory-minimum sentence and that its failure to do so rendered the termination entry void. This argument lacks merit. In *Foster*, the Ohio Supreme Court held, among other things, that trial courts are not required to make findings before imposing more than a statutory-minimum sentence or a maximum sentence. Although Cox committed at least some of his offenses prior to *Foster*, he was sentenced after the decision in that case. It is well settled that *Foster's* "severance remedy," which eliminated the need for the findings at issue, applies to defendants who committed their offenses before *Foster* but were sentenced after *Foster*. *See, e.g., State v. Clayton*, 2d Dist. Montgomery No. 22937, 2009-Ohio-7040, ¶ 83-86. Therefore, the trial court was not obligated to

make findings to support more-than-minimum or maximum sentences.[2] The first assignment of error is overruled.

**FOOTNOTES**

**2** Following *Foster*, the General Assembly reenacted a requirement for trial courts to make findings before imposing *consecutive* sentences. *See* R.C. 2929.14(C)(4). That requirement took effect on September 30, 2011. Cox makes no argument, however, about consecutive-sentence findings. In fact, he admits that partially "consecutive sentences were justified" in his case. (Appellant's brief at 2). He complains only about the lack of findings for a more-than-minimum sentence on each count.

*State v. Cox*, 2015-Ohio-895, 2015 Ohio App. LEXIS 879 (2nd Dist. Mar. 13, 2015).  As noted above, Cox did not appeal this decision to the Ohio Supreme Court.

As pled in the Petition, this appears to be a claim that the jury must make the findings necessary to impose consecutive sentences as a matter of federal constitutional law.  To that end, Cox cites *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Blakely v. Washington*, 542 U.S. 296 (2004)(Response, ECF No. 10, PageID 1691).  However, the applicability of those cases to findings of fact necessary to sustain a consecutive sentence is negated by the very next case Cox cites, *Oregon v. Ice*, 555 U.S. 160 (2009).  There is no merit to the constitutional claim that a jury must determine the facts on which a consecutive sentence is grounded.

More fundamentally, this Court should not reach the merits of this claim because it was not fairly presented to the Ohio courts as a constitutional claim.  On its face and as decided by the Second District Court of Appeals, it was argued purely in terms of Ohio law.  Because it was not fairly presented, it is procedurally defaulted.  Cox's argument about the interpretation and application of Ohio H.B. 86 raises only questions of Ohio law on which this Court is bound by the interpretation of the Second District.

Finally, as with all the other claims Cox raised in post-conviction collateral attacks, the

claim is procedurally defaulted by Cox's failure to appeal to the Ohio Supreme Court.  Cox argues that the "Respondent has not shown that the Supreme Court of Ohio accepts 'Murnahan Appeals."  (Response, ECF No. 10, PageID 1691.)  Respondent has no burden in that regard. The case reports contain hundreds, probably thousands, of appeals to the Ohio Supreme Court in post-conviction cases since *State v. Murnahan*, 63 Ohio St. 3d 60 (1992).  The fact that the Ohio Supreme Court may rarely exercise its jurisdiction over such appeals does not imply that the jurisdiction does not exist and does not excuse a habeas petitioner's failure to invoke that jurisdiction.

Ground Eight should therefore be dismissed with prejudice.


## Ground Nine:  Standard for Evaluating Sufficiency of Evidence

In his Ninth Ground for Relief, Cox claims the Second District used the wrong standard for evaluating his insufficiency of the evidence assignment of error.  Instead of *Jackson v. Virginia*, 443 U.S. 307 (1979), he says, they should have used the "no evidence" standard of *Thompson v. Louisville*, 362 U.S. 199 (1960).  He argues the *Thompson* standard is stronger than the *Jackson* standard and in fact there is "no evidence" to convict him.

*Thompson* was heard on a writ of certiorari to the Police Court of the City of Louisville, Kentucky.  The ordinance Thompson was accused of violating reads:

> "It shall be unlawful for any person . . . , without visible means of support, or who cannot give a satisfactory account of himself, . . . to sleep, lie, loaf, or trespass in or about any premises, building, or other structure in the City of Louisville, without first having obtained the consent of the owner or controller of said premises, structure, or building; . . ." § 85-12, Ordinances of the City of Louisville.

*Id.* at 204.

Justice Black for a unanimous Court summarized the case as follows:

> In addition to the fact that petitioner proved he had "visible means of support," the prosecutor at trial said "This is a loitering charge here. There is no charge of no visible means of support." Moreover, there is no suggestion that petitioner was sleeping, lying or trespassing in or about this cafe. Accordingly he could only have been convicted for being unable to give a satisfactory account of himself while loitering in the cafe, without the consent of the manager. Under the words of the ordinance itself, if the evidence fails to prove all three elements of this loitering charge, the conviction is not supported by evidence, in which event it does not comport with due process of law. The record is entirely lacking in evidence to support any of the charges.

*Id.*    About ten years after *Thompson*, of course, the Supreme Court declared loitering itself to be a constitutional right. *Papachristou v. Jacksonville,* 405 U.S. 156 (1972), followed,. *Chicago v. Morales,* 527 U.S. 41 (1999), *citing Williams v. Fears,* 179 U.S. 270 (1900).

*Thompson*, as applied to this case, does not state a different standard from *Jackson*, for it there is no evidence of an element of a crime, there is *a fortiori* insufficient evidence. But the evidence as summarized by the Second District on direct appeal shows not only that there is some evidence, but, above and beyond that, there is sufficient evidence. There was direct testimony from the victim, C.F., about what Cox did to her on many separate occasions. Cox's argument comes down to asking the Court to put C.F.'s testimony completely aside. If that were done, there would be insufficient evidence, but there is no warrant in law for doing so.

Ground Nine should be dismissed with prejudice.

**Conclusion**

`    Based on the foregoing analysis, it is respectfully recommended that the Petition herein be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth

Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

October 6, 2015.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).